UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HARPREET S.,

          Petitioner,

     v.

CHRISTOPHER CHESTNUT, et al.,

          Respondents.

No. 1:26-cv-00274-TLN-CSK

**ORDER**

This matter is before the Court on Petitioner Harpreet S.'s[1] ("Petitioner") Ex-Parte Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2.)  For the reasons set forth below, Petitioner's Motion is GRANTED and Respondents are ORDERED TO SHOW CAUSE why a preliminary injunction should not issue.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a native and citizen of India. (ECF No. 2 at 2.)  Petitioner entered the United

---

[1]    As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.  The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

States without inspection on October 27, 2021.  (*Id.*; ECF No. 1-2 at 5.)  The U.S. Department of Homeland Security ("DHS") thereafter detained him and then released him on recognizance on November 1, 2021, in accordance with the Immigration and Nationality Act ("INA") § 236. (ECF No. 2 at 2; ECF No. 1-2 at 5; ECF No. 1-3 at 2.)  Petitioner was released subject to alternative to detention ("ATD") monitoring and mandatory check-ins with U.S. Immigration and Customs Enforcement ("ICE").  (*Id.*; ECF No. 1-3 at 2.)

On November 29, 2021, Petitioner received a Notice to Appear charging him under the INA § 212(a)(6)(A)(i) as a noncitizen present without admission or parole.  (ECF No. 2 at 2; ECF No. 1-2 at 2.)  Petitioner subsequently filed an application for asylum, obtained lawful employment authorization, and states he has fully complied with all his release conditions for the past three years.  (ECF No. 2 at 2.)

In June 2025, during a routine and scheduled ICE check-in, Petitioner was detained without warning, without any intervening violation, and without any individualized custody determination.  (*Id.*)  Since then, Petitioner has been detained without a bond hearing.  (*Id.*) Currently, Petitioner is detained at the California City Corrections Center.  (ECF No. 1 at 4.)

On January 14, 2026, Petitioner filed a writ of habeas corpus.  (*See generally id.*)  The same day, Petitioner filed a TRO challenging the constitutionality of his detention and seeking immediate release.  (ECF No. 2.)

**II.    STANDARD OF LAW**

For a TRO, courts consider whether a petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows

that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

### III.    ANALYSIS[2]

#### A.    Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his procedural due process claim.[3] The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D.

---

[2]    The Court finds Petitioner has met the requirements for issuing a temporary restraining order without notice. *See* Fed. R. Civ. P. 65(b). Petitioner provided notice to Respondents on January 14, 2026. (ECF No. 2-2 at 2.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

[3]    Given this, the Court does not address Petitioner's other claims.

3

Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M.*, 2025 WL 2617255, at *3.

Here, Petitioner gained a liberty interest in his continued freedom when ICE elected to release him on recognizance in 2021. (ECF No. 1-3 at 2.) Under *Morrisey*, this release implied a promise that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. Petitioner states he has complied with all the conditions of his release and was detained without warning or notice of any intervening violation. (ECF No. 2 at 2.) Moreover, for approximately three years, Petitioner built a life in the United States and received authorization to work. (*Id.*) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

4

procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner was out of custody for approximately three years, had built a life in the United States, and has complied with all the requirements imposed on him. Despite that, Petitioner has now been detained since June 2025 without being afforded a bond hearing. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing. "Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M.*, 2025 WL 2617255, at *4 (internal quotation and citation omitted). Petitioner represents he has complied with all the requirements imposed on him and has never been found to pose a flight risk or danger to the community. (ECF No. 2 at 2.) Based on this record, the Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest. Moreover, without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Indeed, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum case than to continue to detain him. Additionally, it is not clear that Respondents have supplied Petitioner with any legitimate reason for detaining him. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."). *Hernandez*, 872 F.3d at 994. When

Petitioner entered the United States, he was inspected by an immigration officer and released. Petitioner would not have been released if he were deemed a flight risk or danger to the community.  Moreover, Petitioner asserts he has complied with all the requirements imposed on him.

On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due process: a hearing to determine whether detention is warranted.  Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

### B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Petitioner has been detained since June 2025 without a bond hearing and "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).

In sum, these last two factors weigh in Petitioner's favor.  Therefore, the Court GRANTS

Petitioner's Motion for a TRO.  (ECF No. 2.)

**IV.   CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1.  Petitioner's Motion for a Temporary Restraining Order (ECF No. 2) is GRANTED.

2.  Respondents must IMMEDIATELY RELEASE Petitioner Harpreet S. from custody under the same conditions as he was released previously, prior to his June 2025 detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3.  Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where the Government shall bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk, and Petitioner shall be allowed to have his counsel present.

4.  Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a preliminary injunction continuing this order.  Respondents shall file responsive papers by **Friday, January 23, 2026 at 5:00 p.m**.  Petitioner may file a reply, if any, by **Tuesday, January 27, 2026 by 12:00 p.m**.  **The parties shall indicate in their briefing whether they waive hearing**.  Fed. R. Civ. P. 65(b)(3).  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

5.  Petitioner is ORDERED to immediately serve this Temporary Restraining Order and Order to Show Cause on Respondents at usacae.ecf2241-imm@usdoj.gov.  Petitioner shall file proof of such service no later than **9 a.m. on January 15, 2026.**

6.  Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice to Petitioner.  Fed. R. Civ. P. 65(b)(4).

7.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015

7

(9th Cir. 2011).

8. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initial.

IT IS SO ORDERED.

Date: January 14, 2026

_____

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

8